# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Hayes v. Adams, 2013 IL App (2d) 120681**

---

| | |
|---|---|
| Appellate Court Caption | KRISTEN N. HAYES, Plaintiff-Appellant, v. TINA L. ADAMS, Defendant-Appellee (William J. Hearle, d/b/a Carriage House Animal Clinic, and Sekowski Veterinary Service, LLC, d/b/a Carriage House Animal Clinic, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0681 |
| Filed | February 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dog-bite case, summary judgment was properly entered for the legal owner of the dog where the dog was left at a veterinary clinic for services and plaintiff was bitten when the dog escaped while being walked by a clinic employee, since strict liability did not apply and no reasonable basis existed for imposing liability when defendant was not in control of the dog, she could not have prevented the injury, and she had no reason to believe the dog would escape and bite someone. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-L-370; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

John C. Ambrose and Bradley M. Cosgrove, both of Ambrose &
Associates, P.C., of Chicago, for appellant.

Michael Resis and Ellen L. Green, both of SmithAmundsen LLC, of
Chicago, and Thomas P. Scherschel, of St. Charles, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    In this case involving injuries caused by a dog bite, the plaintiff, Kristen N. Hayes, appeals the trial court's order granting summary judgment in favor of the defendant, Tina L. Adams. At issue is whether Adams was liable as the legal owner of the dog under the Animal Control Act (Act) (510 ILCS 5/16 (West 1996)). Adams was not present when the dog bit Hayes, having relinquished the dog into the custody and control of a veterinary clinic that then allowed the dog to escape. We determine that the Act does not impose strict liability on the legal owner and that there was no factual or reasonable basis to impose liability. Accordingly, we affirm.

¶ 2                          I. BACKGROUND

¶ 3    On April 23,1997, Adams took her Lhasa Apso dog, Gucci, to defendant William J. Hearle's veterinary practice, the Carriage House Animal Clinic, for a surgical procedure. Gucci had lived with Adams for approximately 9 or 10 years in Adams' home. Adams had never had any problems with Gucci, and Gucci had never chased other dogs or bitten anyone. Adams described Gucci as a pretty calm dog who was fine around children. Adams dropped Gucci off at the clinic and removed Gucci's collar and chain, which someone at the clinic replaced with a rope. Adams then continued on to work, taking the collar and chain with her.

¶ 4    The practice of the clinic was to walk dogs before surgery. The clinic used its own noose and chain for walking the dogs. A veterinary assistant walked Gucci to a grassy area where Gucci got loose and ran away. The assistant chased Gucci to an area where Hayes, who was eight years old at the time, was waiting for the school bus. The assistant yelled for help in catching Gucci, and Hayes tried to pick Gucci up for her. Gucci then bit Hayes on the right hand at the base of the thumb. As a result of the bite, Hayes suffered pain, swelling, and an inability to engage in various activities. She later underwent three surgeries, one in January 2000, one in December 2006, and another in the summer of 2008.

¶ 5    Hayes filed suit against Adams; and Hearle and Sekowski Veterinary Service, LLC, both

-2-

doing business as the Carriage House Animal Clinic. Adams moved for summary judgment. On February 14, 2012, the court granted the motion on the basis that Adams did not have care or dominion over Gucci at the time of the injury. The court found that Adams was not strictly liable for the injury solely because of her ownership of the dog. Hayes' motion to reconsider was denied. The court found that there was no just reason to delay an appeal under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), and Hayes appeals.

¶ 6                                        II. ANALYSIS

¶ 7          Hayes contends that, as the legal owner of Gucci, Adams was liable under the Act. Adams argues that, under case law, she cannot be held strictly liable when she did not have custody and control over the dog at the time of the injury.

¶ 8          "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 377 Ill. App. 3d 536, 542 (2007). "Whether the entry of summary judgment was appropriate is a matter we review *de novo*." *Id.* Questions of ownership under the Act are often for the trier of fact. However, in appropriate cases, summary judgment is proper. *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 533 (1998).

¶ 9          At the time of the injury, the Act provided that "[i]f a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (West 1996).

¶ 10         An "owner" was defined as "any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." 510 ILCS 5/2.16 (West 1996).

¶ 11         In order to recover under the Act, the plaintiff must prove four elements: " '(1) an injury caused by an animal owned by the defendant; (2) lack of provocation; (3) the peaceable conduct of the injured person; and (4) the presence of the injured person in a place where he has a legal right to be.' " *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1054 (2009) (quoting *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 147 (1994)).

¶ 12         Although on its face the Act would appear to hold any legal owner of a dog strictly liable for injuries, and "the [Act] is not negligence-based and does not require an injured party to prove that the 'owner' is negligent, the Act also does not impose strict liability upon the owner." *Id.* "At common law, a person injured by an animal could not recover unless the injured party could prove that the animal had dangerous propensities, in that the animal had attacked someone before." *Id.* at 1053-54. "One of the reasons that [the Act] became law was to eliminate the requirement that an injured party must plead and prove that the animal owner knew or should have known about the animal's dangerous propensities." *Id.* at 1054. The Act, however, has been held not to repeal the common-law action. *Vanderlei v. Heideman*, 83 Ill. App. 3d 158, 162 (1980).

¶ 13    "The purpose of [the Act] 'is to encourage tight control of animals in order to protect the public from harm.' " *Beggs*, 393 Ill. App. 3d at 1054 (quoting *Wilcoxen v. Paige*, 174 Ill. App. 3d 541, 543 (1988)). "Because liability is mandated under the Act, the existence of the law serves as an incentive to keep one's animals from harming others." *Id.* Courts have said that "[s]ince the overriding purpose of the Act is the protection of the public from harm, the Act imposes penalties against both the owner of the animal and anyone 'who places himself in a position of control akin to an owner.' " *Id.* (quoting *Wilcoxen*, 174 Ill. App. 3d at 543). But courts have also rejected a strict liability interpretation that would impose liability as a pure penalty for dog ownership. *Wilcoxen*, 174 Ill. App. 3d at 543. "Rather, the courts require a factual or reasonable basis for liability." *Id.*

¶ 14    As the court in *Vanderlei* explained:

"We approach the question of the legislative intent with reference to various rules of statutory construction. Where literal enforcement of the statute will result in great injustice which was not contemplated, we will construe the statute to give effect to what must have been reasonably intended by the legislature." *Vanderlei*, 83 Ill. App. 3d at 160.

Further, "[a] statute in derogation of the common law will not be construed as changing that law beyond what is expressed by the words in the statute or is necessarily implied from the language of the statute." *Id.* Courts are reluctant "to find a legislative intention to impose strict liability unless the enactment is intended to protect a certain class of persons with relative inability to protect themselves." *Id.* at 161. As a result, despite the fact that the express language of the Act appears to be absolute, it has been held not to apply in several situations where the plaintiff has brought himself or herself within its express terms. See *id.*

¶ 15    For example, in *Bailey v. Bly*, 87 Ill. App. 2d 259, 261-62 (1967), the court noted that, under the Act, it is unnecessary to prove negligence by the owner. However, the court refused to apply the statute to a plaintiff who tripped over the defendant's dog, reasoning that there must be behavior or activity on the part of the dog and that liability may not be imposed solely as a penalty for dog ownership. *Id.* at 262. The *Vanderlei* court noted that, if the Act were to be interpreted as creating strict liability whenever a plaintiff came within its definition, there would be no reason to retain the common-law action. *Vanderlei*, 83 Ill. App. 3d at 162.

¶ 16    We have been unable to find any case in Illinois in which the legal owner had given up control of a dog to a third party after which the dog then bit yet another person. The parties also do not point us to any such case. However, we find two cases particularly instructive.

¶ 17    In *Carl v. Resnick*, 306 Ill. App. 3d 453 (1999), the court discussed care, custody, and control of an animal as they relate to the issue of ownership. There, the plaintiff was injured while riding a horse owned by the defendant. The court noted that the fact that the plaintiff was in control of the horse did not relieve the defendant of liability. But the court also noted that the defendant was more than just a legal owner at the time of the incident, because the defendant was also riding along with the plaintiff and testified in her deposition that she never let anyone ride her horse without her presence. Thus, the court found that the defendant, by her presence at the time of the injury in conjunction with her legal ownership, "clearly established that she maintained care, custody, and control of her horse to bring her

-4-

within the definition of 'owner' found in the [Act]." *Id.* at 464. This, of course, differs from the instant case, where Adams was not in care, custody, or control of Gucci at the time of the injury.

¶ 18 The effect of care, custody, and control was more clearly stated in *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 192 (1991), where the court held that a mother, who was technically the legal owner of a dog, was not liable for a dog bite. The mother had purchased the dog for her son who was in the residential custody of his father and no longer lived in the mother's home. The plaintiff argued that the mother was liable as an owner by virtue of the parent-child relationship, but the court rejected that argument, stating that the Act "contemplates some level of care, control, or custody." *Id.* The court further stated:

"This is an effort by the legislature to place the burden on parties who might best be in a position to prevent the animal from causing harm. Extending liability to a noncustodial parent would seemingly fly in the face of such a policy, as [the mother] was not in a position where she could have controlled the dog or prevented the injury." *Id.*

As in the case before us, the trial court in *Papesh* granted summary judgment in favor of the legal owner.

¶ 19 There is one instance in which a court held that the Act made the legal owner strictly liable to a third party. However, it is distinguishable. In *Wilson v. City of Decatur*, 389 Ill. App. 3d 555, 556-57 (2009), a police dog owned by the city bit the plaintiff while being handled by a police officer. The plaintiff did not allege that the officer was liable and instead argued that the city was liable based on its ownership of the dog. In addressing whether the city was immune from suit, the reviewing court stated that the plain language of the Act made the owner strictly liable. *Id.* at 560. The court found that its holding supported the purpose of the Act, to protect the public from harm by encouraging the tight control of animals. *Id.* (citing *Wilcoxen*, 174 Ill. App. 3d at 543). There, however, it was an employee of the city who was handling the dog, so the city still had care, custody, and control via its agent. Thus, we do not find *Wilson* applicable.

¶ 20 Here, given that courts have routinely rejected a strict liability interpretation, the trial court correctly granted summary judgment in favor of Adams. Once strict liability was eliminated, there was no basis for Adams to be held liable, because, as in *Papesh*, she was not in a position to control the dog or prevent the injury. Instead, she relinquished care, custody, and control to the veterinary clinic, and there was nothing to indicate that she had any reason to believe that the clinic would allow the dog to escape or that the dog would bite someone. Thus, there is no factual or reasonable basis to impose liability, as doing so would do nothing more than impose liability as a pure penalty for dog ownership. *Wilcoxen*, 174 Ill. App. 3d at 543.

¶ 21 Hayes attempts to distinguish some of the cases discussing these principles, because they also address whether a plaintiff can assume the risk of an injury or can be liable if he or she too was acting as an "owner" at the time of the injury. See, *e.g.*, *id.*; *Vanderlei*, 83 Ill. App. 3d at 163. We acknowledge that this issue is not present here. Nevertheless, those cases reflect courts' reluctance to impose strict liability under the Act, which is in derogation of the common law. Indeed, in those cases, the assumption-of-the-risk defense was allowed

because strict liability did not apply. Accordingly, here, the trial court correctly granted Adams' motion for summary judgment.

¶ 22                                III. CONCLUSION

¶ 23     Adams was not strictly liable based on her legal ownership of Gucci. The judgment of the circuit court of Du Page County is affirmed.

¶ 24     Affirmed.