2023 IL App (1st) 220464

No. 1-22-0464

Opinion filed March 16, 2023

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ASHLEY SCOLLARD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 8789 |
| | ) | |
| JO'LANDA WILLIAMS, | ) | Honorable |
| | ) | Gerald Cleary, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Ashley Scollard appeals the trial court's summary judgment order in favor of

defendant Jo'Landa Williams on plaintiff's personal injury claim. Plaintiff filed a two-count

complaint based on injuries plaintiff sustained because of a dog bite. The dog bite occurred when

plaintiff, who often volunteered helping animals, responded to a Facebook message about a

potentially lost and injured dog. Plaintiff responded to the area where the dog was located, plaintiff

interacted with and petted the obviously-injured dog, and the dog bit plaintiff. The dog, Ace,

belonged to defendant. Ace had gotten loose from defendant's backyard.

¶ 2    Count 1 sounded in the Animal Control Act (Animal Control Act or Act) (510 ILCS 5/1 *et seq.* (West 2020)) and count 2 sounded in negligence. The trial court concluded that plaintiff was barred from recovery as a matter of law. Regarding the Animal Control Act count, the trial court held that plaintiff had voluntarily assumed the risk of injury when she sought to help a wounded animal she had never met before. On the negligence count, the trial court held that defendant owed plaintiff no duty because there was no evidence that Ace had demonstrated any vicious propensities prior to biting plaintiff. On appeal, plaintiff argues that the implied assumption of risk doctrine does not apply under the Animal Control Act or the facts of this case.

¶ 3    For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Plaintiff sued defendant after defendant's dog, Ace, bit plaintiff. The following facts were adduced through depositions and affidavits prior to the trial court's decision on defendant's motion for summary judgment. Heydi D'Leon testified that she and her sister, Catherine Smith, observed Ace on a sidewalk. Ace appeared to be injured. D'Leon and Smith tried to give Ace water and food. Ace clearly walked with a limp and could not support himself with his hind legs enough to jump into D'Leon's car. Smith tried to lift Ace into the car, and he made "growling noises" because of the pain he was in. D'Leon opined that Ace may have been hit by a car. D'Leon made a post about Ace on a Facebook group dedicated to lost and found dogs and cats in southwest Chicago.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6    Plaintiff testified that she volunteered for rescue organizations, responded to reports of stray or lost dogs, and owned three Husky dogs. Plaintiff responded to the Facebook post and arrived within minutes. There was conflicting evidence regarding plaintiff's initial interactions with Ace. Plaintiff testified that she laid out a blanket and maintained a significant distance from Ace until Ace independently decided to walk toward plaintiff and lay beside her. D'Leon testified that plaintiff sat right next to Ace and petted his hind legs and the top of his head. D'Leon also testified that plaintiff was present when Ace "nibbled" Smith, which resulted in a scratch. Smith, by affidavit, stated that plaintiff petted Ace, despite his obviously injured state.

¶ 7    There was also conflicting evidence regarding what occurred in the moments immediately leading up to the bite. Plaintiff testified that she was resting her hand on Ace's back when "all of a sudden for no apparent reason" Ace bit her. Plaintiff had been in that position for approximately 20 to 30 minutes prior to the bite. Plaintiff testified that she did not think the bite was due to Ace's injury. However, plaintiff admitted that she sent a message to D'Leon days after the bite where she stated it was not a "mean bite" but that Ace "was just hurt." Smith stated that Ace became agitated and growled when he was accidentally bumped in the head when Smith opened her umbrella. Plaintiff continued to pet Ace, and he bit plaintiff's hand. D'Leon and plaintiff testified that Ace was not startled when Smith opened the umbrella.

¶ 8    Photographs were also introduced showing plaintiff's injuries. The injuries appear relatively mild and include a puncture to the top of plaintiff's hand, as well as some scratches. Plaintiff's injury was exacerbated by an infection which required a multiple day stay in the hospital.

¶ 9    Defendant testified that Ace lived with her while her son was in college. Ace had never been aggressive with anyone in defendant's presence, and Ace was a generally friendly animal with friends and family that visited defendant's home. Ace was an outdoor dog and only came in the house during inclement weather. Ace had escaped the backyard on one prior occasion, approximately 10 years before. The gate to the backyard had a key lock. The lock was still working and secure, but defendant had placed duct tape around the lock where the vinyl was cracking. Around 5 to 6 p.m. on April 28, 2020, defendant received a call that Ace was with D'Leon. Defendant arrived with her two sons to retrieve Ace and get him care. Ace was receptive to defendant's touch but "yelped out" in pain whenever defendant and her two sons tried to get Ace to get up.

¶ 10    Veterinarian Dr. Andrew Pierson stated in an affidavit that Ace had a dislocated right hip. The injury would have caused significant pain and prevented Ace from walking normally.

¶ 11    Defendant filed a motion for summary judgment. On the Animal Control Act count, defendant argued that she was entitled to summary judgment for four reasons: (1) defendant was not in control of Ace at the time he bit plaintiff, (2) plaintiff was Ace's owner under the Act at the time of the bite so that plaintiff could not maintain a claim under the Act, (3) plaintiff assumed the risk of injury by petting the injured dog who did not know plaintiff, and (4) plaintiff provoked Ace. On the negligence count, defendant argued she was entitled to summary judgment primarily because there was no evidence that Ace had vicious propensities, there was no evidence of how Ace got out of the backyard, and plaintiff could not prove that any alleged negligence on defendant's behalf was the proximate cause of plaintiff's injuries.

¶ 12    Plaintiff responded that defendant remained the owner of Ace under the Act, since plaintiff never accepted any responsibilities typical of the ownership of a dog. Plaintiff also argued that defendant inappropriately attempted to expand the assumption of risk doctrine. The doctrine was inapplicable, according to plaintiff, because plaintiff never expressly assumed the risk of a dog bite and there was no employment or contractual relationship between plaintiff and defendant. Plaintiff argued that merely petting an injured dog did not amount to provocation as a matter of law. Finally, plaintiff argued that Ace had mischievous propensities where he had previously escaped his backyard and that defendant was negligent in confining Ace.

¶ 13    The trial court granted defendant's motion for summary judgment on both counts. On the negligence count, the trial court concluded that Ace had never demonstrated a vicious propensity prior to the bite in this case. Plaintiff could not present a factual scenario where defendant owed her a duty of care where the record only established that Ace had gotten loose once. Regarding the Animal Control Act count, the trial court found the case analogous to *Ennen v. White*, 232 Ill. App. 3d 1061 (1992). The trial court found that plaintiff voluntarily engaged a wounded animal she had never met before, in spite of common knowledge that wounded animals can act both aggressively and unpredictably.

¶ 14    The trial court granted summary judgment in favor of defendant in a written order filed on March 10, 2022. No postjudgment motions were filed. Plaintiff filed her notice of appeal on April 1, 2022. This is a direct appeal of the trial court's judgment.

¶ 15                                  II. ANALYSIS

¶ 16    Plaintiff sued defendant after sustaining injuries when Ace, defendant's legal dog, bit plaintiff on the hand. After a factual record was made, defendant moved for summary judgment,

pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2020)). The trial court granted summary judgment on both the negligence and Animal Control Act counts. Plaintiff only challenges the trial court's decision on the Animal Control Act count.

¶ 17    "The purpose of summary judgment is to determine if a question of material fact exists." *Fifth Third Mortgage Co. v. McCord*, 2021 IL App (1st) 200512, ¶ 19. Summary judgment should only be entered where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review the trial court's decision to grant summary judgment *de novo*, which means we perform the same analysis as would the trial court. *Id.*

¶ 18    Section 16 of the Animal Control Act (510 ILCS 5/16 (West 2020)) provides:

"If a dog or other animal, without provocation, attacks, attempts to attack, or injures any person who is peaceably conducting himself or herself in any place where he or she may lawfully be, the owner of such dog or other animal is liable in civil damages to such person for the full amount of the injury proximately caused thereby."

"The Act was passed to protect the public by encouraging tight control of animals." *Garcia v. Nelson*, 326 Ill. App. 3d 33, 40 (2001). To succeed on a claim under the Act, a plaintiff must prove "(1) injury caused by an animal owned by the defendant; (2) lack of provocation; (3) peaceable

conduct by the plaintiff; and (4) the presence of the plaintiff in a place where she had a legal right to be." *Crosson v. Ruzich*, 2018 IL App (5th) 170235, ¶ 24.

¶ 19    The parties present four issues in this appeal. First, whether defendant was an "owner" under the Act at the time Ace bit plaintiff. Second, whether plaintiff was an "owner" of Ace at the time of the bite. Third, whether, and to what extent, the assumption of risk doctrine applies to the facts of this case. Finally, whether there is a genuine issue of material fact as to whether Ace was provoked when he bit plaintiff. Issues one and four will be discussed individually. Issues two and three are so intertwined as to really present one question—namely, whether plaintiff's relationship with either defendant or Ace objectively excluded her from the class of protected persons under the Act. As will be fully discussed below, there is a genuine issue of material fact on this issue and the issue of provocation. Thus, the trial court should not have granted defendant's motion for summary judgment on the Animal Control Act count.

¶ 20                              A. Defendant Was an "Owner" Under the Act

¶ 21    The first statutory element plaintiff was required to prove was that Ace was owned by defendant at the time of the bite. Defendant was Ace's "owner" under the Act. The Act defines "owner" as "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her." 510 ILCS 5/2.16 (West 2020). Defendant clearly had a "right of property" in Ace when he bit plaintiff. Nonetheless, defendant argues that she was not an "owner" under the Act because "she was not in control of Ace" when he bit plaintiff. In *Hayes v. Adams*, 2013 IL App (2d) 120681, ¶ 20, defendant's primary authority, the court held that the defendant was not an "owner" of her dog under the Act where she "relinquished care, custody, and control to the veterinary clinic, and there was nothing to indicate that she had any reason to believe

that the clinic would allow the dog to escape or that the dog would bite someone." The court concluded that the defendant could not be held liable under the Act as an owner because "she was not in a position to control the dog or prevent the injury." *Id.*

¶ 22    Defendant's reliance on *Hayes* is inapt. *Hayes* is limited to situations where the legal owner of an animal relinquishes care and control to another responsible entity, such that the legal owner can reasonably expect that the entity will exercise the "tight control" expected under the Act. In that situation, it would be unfair to hold the legal owner liable under the Act where the legal owner could do nothing to prevent the injury. Here, defendant did not voluntarily relinquish control of Ace to another individual or entity who would have been expected to control Ace responsibly. Plaintiff and the other interested individuals interacted with Ace for the limited purpose of reuniting Ace and defendant. A holding that defendant was not an "owner" of Ace at the time of the bite would run directly contrary to the Act's purpose of protecting the public through the "tight control" of animals. Defendant was an "owner" under the Act and, thus, she was not entitled to summary judgment on the basis that she was not an "owner" at the time of the bite.

¶ 23                              B. Plaintiff as Owner or Assumed Risk

¶ 24    The next two issues are interrelated and focus on plaintiff's relationship with Ace at the time of the bite. Courts have taken two approaches in analyzing whether a plaintiff has a relationship with either the animal's legal owner or the animal itself, so as to objectively exclude the plaintiff from the Act's protections. See *Carl v. Resnick*, 306 Ill. App. 3d 453, 462 (1999). The first, "assumption of risk" analysis, focuses on the plaintiff's relationship with the animal's legal owner. The second, "owner" analysis, focuses on the plaintiff's relationship with the animal. See *id.*

¶ 25    We begin with a discussion of the evolution of the assumption of risk doctrine in relation to the Animal Control Act. In *Harris v. Walker*, 119 Ill. 2d 542, 547 (1988), our supreme court explained that

> "the legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the dog or other animal or the lack of any such relationship, may not have any way of knowing or avoiding the risk that the animal poses to them."

The plaintiff in *Harris* was excluded from the Act's coverage because he had rented the horse from the defendant's stable and claimed to fully understand and accept the risks of horseback riding. *Id.* Our supreme court held that "where a person rents a horse and understands and expressly accepts the risks of using the horse, he cannot recover damages from the person who rented the horse to him under section 16 of the Animal Control Act." *Id.* at 548. Our supreme court focused on the relationship between the plaintiff and the horse's legal owner, concluding: "By establishing this relationship, the plaintiff took himself out of the class of persons the legislature intended to protect." *Id.* at 547-48.

¶ 26    *Harris* involved a contractual relationship between an injured party and the animal's legal owner, where the plaintiff had expressly assumed the risk of injury. The assumption of risk doctrine has also been applied in employment settings. "The doctrine has been applied to persons who by reason of being professionals are held to bear the risks of their profession." *Vanderlei v. Heideman*, 83 Ill. App. 3d 158, 163 (1980). In *Vanderlei*, the plaintiff, an independent contractor who entered into an agreement to shoe the defendant's horses, was excluded from recovery under the Act because "he encountered the risk of being kicked while shoeing the horse voluntarily with

full knowledge and appreciation of the danger." *Id.*; see also *Clark v. Rogers*, 137 Ill. App. 3d 591, 595 (1985) (holding that a horse trainer assumed the risk of a fall where she "accepted employment as a trainer of stallions knowing such horses were likely to buck or jump"). *Harris* represents the express assumption of risk, while *Vanderlei* and *Clark* represent the typical primary implied assumption of risk case, based on an employment relationship. See Illinois Pattern Jury Instructions, Civil, No. 13.00 (approved Dec. 8, 2011) (hereinafter IPI Civil No. 13.00) ("In Illinois, primary assumption of risk is recognized only in situations in which (1) the plaintiff is the defendant's employee or (2) there is some other contractual relationship between the parties under which the plaintiff's duties involve exposure to an inherent hazard.").

¶ 27     In *Ennen*, the court extended the holding in *Harris* to individuals who ride horses even absent any contractual relationship between the plaintiff rider and the defendant legal owner. *Ennen*, 232 Ill. App. 3d at 1066. "Once the rider mounts the horse, the rider is no longer a bystander or observer but is someone who has asserted dominion over the animal and is an active partner with the animal in recreational activity." *Id.* The court held that "[w]here a person accepts responsibility for controlling an animal, he or she cannot recover for injuries sustained when he or she fails to control the animal." *Id.* While assumption of risk is a strong underlying theme in *Ennen*, the analysis tracks closer to the "owner" analysis that will be discussed shortly.

¶ 28     The final type of assumption of risk is secondary implied assumption of risk, which can occur without an employment or contractual relationship. For example, in *Malott v. Hart*, 167 Ill. App. 3d 209, 211 (1988), the court held that the plaintiff, an experienced cattleman, could not recover under the Act for injuries incurred when the plaintiff volunteered to assist the defendant in moving his cattle. The plaintiff testified that "cattle are known to trample people on occasion,

and that being trampled is a risk one takes in dealing with them." *Id.* The court concluded that the plaintiff "assumed the ordinary risks incident" to moving cattle. *Id.*

¶ 29    The "assumption of risk" recognized in *Malott* occurs "where the plaintiff is aware of and appreciates a danger that has been created by the defendant's negligence or other fault, but the plaintiff nevertheless voluntarily proceeds to encounter it." IPI Civil No. 13.00; *Duffy v. Midlothian Country Club*, 135 Ill. App. 3d 429, 434 (1985). The secondary implied assumption of risk appears to be the type of assumption of risk extrapolated from our supreme court's decision in *Harris*, where the court reasoned that the Act is only meant to cover those who "may not have any way of knowing or avoiding the risk that the animal poses to them." *Harris*, 119 Ill. 2d at 547. Courts now almost unanimously take the position that a " 'plaintiff who invites the risk that the animal will injure him, or one who explicitly assumes that risk *** may not recover under the Act.' " *Johnson v. Johnson*, 386 Ill. App. 3d 522, 535 (2008) (quoting *Garcia*, 326 Ill. App. 3d at 40, and calling the position "well-accepted"); but see *Guthrie v. Zielinski*, 185 Ill. App. 3d 266, 272 (1989) (holding that the assumption of risk doctrine is limited to the express assumption of risk situations or those involving an employment or contractual relationship).

¶ 30    The "owner" analysis focuses on the injured party's relationship to the animal. As stated above, the Act defines "owner" as "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her." 510 ILCS 5/2.16 (West 2020). "[W]here a person voluntarily accepts responsibility for controlling or caring for a dog or other animal, that person is an 'owner' within the meaning of the Act and is precluded from recovery under the Act." *VanPlew v. Riccio*, 317 Ill. App. 3d 179, 182 (2000).

¶ 31    In *Wilcoxen v. Paige*, 174 Ill. App. 3d 541, 542 (1988), the plaintiff owned a boarding and grooming business. The plaintiff agreed to board the defendant's dog for a fee. *Id.* The dog attacked the plaintiff while it was under her "control and care." *Id.* The court concluded that the plaintiff "voluntarily accepted responsibility for controlling the defendant's dog, placing herself within the definition of an 'owner' under the Act." *Id.* at 543.

¶ 32    Courts have found other individuals barred from recovery where their actions were akin to those of an owner. See *Docherty v. Sadler*, 293 Ill. App. 3d 892, 896 (1997) (concluding that the plaintiff was barred from recovery where he agreed to take care of his neighbor's dog for five days); see also *Hassell v. Wenglinski*, 243 Ill. App. 3d 398, 402 (1993) (holding that the plaintiff, an employee of the defendant, was an "owner" under the Act when she was injured while walking the defendant's dog). Our supreme court has added that the term "keeper" refers to " '[o]ne who, either with or without [the] owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.' " *Steinberg v. Petta*, 114 Ill. 2d 496, 501 (1986). The "owner" analysis can be summed up as follows: "one who voluntarily assumes control of the animal places himself in the position of the owner." *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 149 (1994).

¶ 33    Here, plaintiff would not lose the protections of the Act under either the assumption of risk or owner analysis. Plaintiff was not, as a matter of law, an owner of Ace. Petting and generally accompanying a lost animal while authorities contact the owner are not actions akin to that of an owner. Plaintiff did not undertake to feed, water, or walk Ace. Plaintiff did not transport Ace or attempt to harbor him on her property. In short, there was scant evidence that plaintiff filled the role of Ace's owner and certainly not enough evidence to warrant summary judgment in defendant's favor.

¶ 34    Under the slightly broader assumption of risk doctrine, there is still an issue for the trier of fact because of the conflicting evidence about plaintiff's interaction with Ace. Plaintiff did not, as a matter of law, assume or invite the risk of being bitten by Ace. Plaintiff testified that she did not put herself in a "risky situation." Because she knows dogs very well, she waited until Ace came to her, and Ace was very trusting and calm. Plaintiff's account is at least partly supported by the fact that plaintiff sat with Ace for approximately an hour without incident. D'Leon and Smith provided evidence that plaintiff was immediately comfortable with the lost and injured Ace. D'Leon thought plaintiff was "too comfortable" with Ace. D'Leon testified that Ace did not come toward anybody and instead remained laid down. D'Leon testified that plaintiff was present at a point when Ace "nibbled" Smith, resulting in a scratch. Smith stated that plaintiff continued to interact with Ace, even after he was agitated and growling after Smith's umbrella tapped Ace. In short, there is a genuine issue of material fact as to whether plaintiff assumed the risk of a dog bite through her interaction with Ace.

¶ 35    We also do not think, as a policy matter, that an individual in plaintiff's position should be removed from the coverage of the Act as a matter of law. Defendant's proposal would essentially bar recovery under the Act for any individual who voluntarily comes into contact with a lost and injured dog. The purpose of the Act, "tight control" of animals to protect the public, is served where a citizen makes a cautious attempt to reunite a pet with its owner. Defendant herself testified that she would hope a citizen would "do their best to reach out to [her] and try to get [her] back in touch with" the lost and injured Ace. Of course, factual questions will arise in these cases. First, statutorily, there are issues such as whether the citizen's conduct is "peaceable" and whether the injury occurred "without provocation." Second, if assumption of risk is raised, there will be the issue of whether the plaintiff, through conduct or knowledge, invited the risk of injury. On the set

of facts before us, there are genuine issues of material fact on these issues. Thus, summary judgment was improperly entered in defendant's favor on the Animal Control Act count.

¶ 36                          C. Ace Was Not Provoked as a Matter of Law

¶ 37    Defendant also argues that we can affirm the trial court's decision because Ace was provoked as a matter of law. A lack of provocation is an element of a claim under the Act. 510 ILCS 5/16 (West 2020); *Crosson*, 2018 IL App (5th) 170235, ¶ 24. Provocation has been defined as " 'any action or activity, whether intentional or unintentional, which would be reasonably expected to cause a normal dog in similar circumstances to react in a manner similar to that shown by the evidence.' " *Kirkham v. Will*, 311 Ill. App. 3d 787, 794 (2000). Provocation is measured from the animal's perspective. *Nelson v. Lewis*, 36 Ill. App. 3d 130, 131 (1976). The injured party does not have to be the provocateur. *Forsyth v. Dugger*, 169 Ill. App. 3d 362, 367 (1988) (holding that the horse was provoked as a matter of law where the undisputed evidence was that the plaintiff was injured after a horse took two to three steps forward as a result of a third party jumping on the horse's back).

¶ 38    Courts have typically required something more than mere petting or touching to find provocation. See *Severson v. Ring*, 244 Ill. App. 3d 453, 457-58 (1993) ("[W]e note that greeting or petting a dog does not generally constitute provocation."). In *Siewerth v. Charleston*, 89 Ill. App. 2d 64, 68 (1967), the court found sufficient provocation under the Act where two young boys pushed and kicked a dog that was recovering from an injury. See also *VonBehren v. Bradley*, 266 Ill. App. 3d 446, 450 (1994) (holding that child's action in striking the dog and attempting to remove a bird from the dog's mouth was provocation as a matter of law).

¶ 39 Here, provocation is a question of fact for the jury. Plaintiff testified that she was resting her hand on Ace's back "when all of a sudden for no apparent reason," he bit her. Plaintiff also admitted to sending a message days after the bite, which read, "It wasn't a mean bite. He was just hurt." Thus, plaintiff's own statements provide a question of fact over whether Ace's bite was unprovoked or provoked by his injured status alone. Smith stated in her affidavit that she "opened an umbrella and accidentally tapped the dog in the head with the umbrella, which agitated him and caused him to growl." Smith continued that, despite the growling, plaintiff "kept petting the injured (and now agitated) dog and he then bit her hand." It is unclear from Smith's affidavit how immediate the bite was after Ace was tapped with the umbrella. But both D'Leon and plaintiff testified that Ace was not startled when the umbrella was opened. These contrasting versions of events present yet another question of fact over the role, if any, Smith's umbrella played in provoking Ace. Thus, while there is some evidence that Ace was provoked, defendant was not entitled to judgment on provocation as a matter of law.

¶ 40                                             III. CONCLUSION

¶ 41 For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this decision.

¶ 42 Reversed and remanded.

---

*Scollard v. Williams*, 2023 IL App (1st) 220464

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-8789; the Hon. Gerald Cleary, Judge, presiding. |
| **Attorneys for Appellant:** | George G. Argionis and Jason A. Sanders, of Argionis & Associates, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ellen J. O'Rourke and Gregory A. Suhar, of Yvonne M. Kaminski & Associates, of Chicago, for appellee. |